Nguyen D. Luu
LUU LAW, PC
772 N 1st Street
San Jose, CA 95112
Tel: (408) 975-9321
Fax: (408) 975-9654
Email: nguyen@luulaw.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
*Western Division*

|  |  |
|---|---|
| Qiming WANG, | Case Number: |
| Plaintiff, | *Title of Document:* **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| Kristi NOEM, Secretary, U.S. Department of Homeland Security; | |
| Jennifer B. HIGGINS, Acting Director, U.S. Citizenship and Immigration Services; and | |
| Tracy TARANGO, Director, California Service Center, U.S. Citizenship and Immigration Services, | **AGENCY CASE NUMBER:** I-539 Receipt No.: WAC2411150027 |
| Defendants. | **Immigration Case, Administrative Procedure Act Case** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW Plaintiff, Qiming WANG ("Mr. Wang"), and by and through undersigned counsel, states the following in support of his Complaint for Declaratory and Injunctive Relief:

## I.    INTRODUCTION

1.    Mr. Wang is a national of the People's Republic of China. He has lawfully resided in the U.S. since August 2013, first as a graduate student in electrical and computer engineering, and then as a software engineer for several U.S. employers. Throughout this time, Mr. Wang has continuously maintained his nonimmigrant status and complied with all legal requirements.

2.      Mr. Wang brings this action to vacate Defendants' erroneous, nondiscretionary findings that Mr. Wang is inadmissible for willful misrepresentation and that he failed to maintain F-1 status. The findings against Mr. Wang stem from his unpaid internship with the company Findream in 2015 and 2016. In 2019, Findream's founder pled guilty to visa fraud.

3.      Mr. Wang seeks an Order from the Court compelling Defendants to vacate the findings against him.

4.      Mr. Wang brings this action under the Due Process Clause of the Fifth Amendment of the U.S. Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 500, *et seq*. Defendants' findings are arbitrary and capricious, ultra vires, and issued without due process of law. *See* 5 U.S.C. § 706. The erroneous finding of willful misrepresentation disqualifies Mr. Wang from all immigration benefits and bars him for life from entering the U.S.

5.      This is Mr. Wang's second action against Defendants before this Court. The first action contained three counts against Defendants for APA and due process violations and moved for a temporary restraining order. *Wang v. Mayorkas*, No. 2:24-cv-03189 (C.D. Cal.), ECF No. 1 (Complaint, April 18, 2024), ECF No. 14 (Motion, April 25, 2024).

6.      The Court dismissed Mr. Wang's first action without prejudice after Defendants reopened Mr. Wang's administrative proceedings with USCIS. *Id.*, ECF No. 21 (Order, April 30, 2024). In the Order dismissing Mr. Wang's first action, the Court stated:

> To the extent Plaintiff believes that Defendants reopened his proceedings only to deprive Plaintiff of the ability to seek judicial review, the Court notes that Plaintiff will have an opportunity to seek review once the agency decision is final.

*Id.* at 10.

7.      On November 27, 2024, USCIS issued a final decision denying Mr. Wang's Form I-539, Application to Extend/Change Nonimmigrant Status (Receipt No. WAC2411150027) ("November 2024 Decision"). (**Exhibit C**.)

8.      Now that Defendants have issued another final decision against Mr. Wang, he again seeks relief from this Court. Mr. Wang does not seek to reverse the November 2024 Decision. Rather, Mr. Wang challenges two of its underlying findings. *See* 5 U.S.C. § 551(13)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 2 of 34

(The APA defines "agency action" as "the whole or *a part* of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." (Emphasis added.)).

9.     Mr. Wang asks the Court to compel Defendants to vacate the following erroneous findings in the November 2024 Decision: (1) the finding that Mr. Wang engaged in willful misrepresentation, and (2) the finding that Mr. Wang failed to maintain F-1 status.

10.    Defendants' erroneous findings are based on misapplication of binding legal standards and an improperly heightened standard of proof.

11.    If the Court grants Mr. Wang relief, he will be eligible to apply for U.S. immigration benefits in the future, including a visa issued by a U.S. consulate abroad. If the Court refuses the relief, Mr. Wang faces a lifetime ban on admission to the U.S. and ineligibility for any future U.S. immigration benefits.

12.    Mr. Wang is entitled to reimbursement of attorney's fees and costs of bringing this action against Defendants, pursuant to the APA, 5 U.S.C. § 504, and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)–(f).

## II.    PARTIES

13.    Mr. Wang is a native and citizen of China who has lawfully resided in the U.S. since August 2013.

14.    Defendant Kristi NOEM is the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, she has responsibility for the administration of immigration laws pursuant to 6 U.S.C. § 251. Defendant NOEM is sued in her official capacity.

15.    Defendant Jennifer B. HIGGINS is the Acting Director of USCIS, a bureau of DHS. In this capacity, she has responsibility for the administration of immigration laws. Defendant HIGGINS is sued in her official capacity.

16.    Defendant Tracy TARANGO is the Director of the California Service Center, an agency of USCIS. Defendant TARANGO has responsibility for the overseeing of the Service Center, which handled the findings against Mr. Wang. Defendant TARANGO is sued in her official capacity.

## III.    JURISDICTION

### A.  The Court has Federal Question Jurisdiction.

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See Califano v. Sanders*, 430 U.S. 99, 106 (1977). This is a civil action against the United States under the Constitution and laws of the U.S., namely, the Due Process Clause of the Fifth Amendment of the U.S. Constitution, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, and the APA, 5 U.S.C. § 500, *et seq.* Additionally, the APA provides a waiver of sovereign immunity for Plaintiff to properly commence this legal action. Actions arising under the APA "shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." 5 U.S.C. § 702.

18.    This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702 and 28 U.S.C. §§ 1361-62.

### B.  The Court has Jurisdiction to Review Defendants' Nondiscretionary Findings on Willful Misrepresentation and Maintenance of Status.

19.    The Court has jurisdiction to review Defendants' findings on willful misrepresentation and maintenance of F-1 status, because the findings are nondiscretionary agency actions.

20.    This Court has broad general power to review agency action. *See Kucana v. Holder*, 558 U.S. 233, 251 (2010) (citing "presumption favoring judicial review of administrative action"). The Court's broad power to review agency action may only be displaced by "clear and convincing indications" that Congress intends to limit it. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018) (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016)).

21.    Findings by Defendants that an applicant engaged in willful misrepresentation or failed to maintain F-1 status are nondiscretionary, legal determinations that involve objective, predicate criteria. *See* 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a

1  visa, other documentation, or admission into the United States or other benefit provided under

2  this chapter is inadmissible."); 8 U.S.C. § 1258(a) ("The Secretary of Homeland Security may,

3  under such conditions as he may prescribe, authorize a change from any nonimmigrant

4  classification to any other nonimmigrant classification in the case of any alien lawfully admitted

5  to the United States as a nonimmigrant who is continuing to maintain that status and who is not

6  inadmissible under section 1182(a)(9)(B)(i) . . . .").

7      22.    Therefore, such findings are not subject to statutory limitations on judicial review

8  of discretionary agency action. Thus, the APA's limitation on judicial review of agency action

9  that is "committed to agency discretion by law" does not prevent the Court's review of

10  Defendants' findings in Mr. Wang's case. 5 U.S.C. § 701(a)(2).

11      23.    Similarly, the nondiscretionary nature of the findings against Mr. Wang sets them

12  outside the bar in section 1252(a)(2)(B)(ii) of the Illegal Immigration Reform and Immigrant

13  Responsibility Act of 1996 ("IIRIRA"). Under that provision, "no court shall have jurisdiction to

14  review . . . any other decision or action of the Attorney General or the Secretary of Homeland

15  Security the authority for which is specified under this subchapter to be in the discretion of the

16  Attorney General or the Secretary of Homeland Security, other than the granting of relief under

17  section 1158(a) . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii).

18      24.    The Supreme Court has observed that section 1252(a)(2)(B)(ii) "bar[s] court

19  review of discretionary decisions *only* when Congress itself set out the . . . discretionary

20  authority in the statute." *Kucana*, 558 U.S. at 247 (emphasis added). *See also Hosseini v.*

21  *Nielsen*, 911 F.3d 366, 371 (6th Cir. 2018) (holding that district court has jurisdiction to review

22  agency determination that asylee was inadmissible for adjustment of status because

23  "admissibility determinations—even those underlying a discretionary decision—are non-

24  discretionary determinations that are subject to judicial review"); *U.S. ex rel. Vaso v. Chertoff*,

25  369 F. App'x 395, 401 (3d Cir. 2010) ("The determination that an alien is statutorily

26  inadmissible is a nondiscretionary, legal determination, for which § 1252 does not foreclose

27  review."). *See also Mia v. Renaud*, No. 22-CV-2098(FB) (E.D.N.Y. Oct. 26, 2023) (holding that

28  where an asylee's adjustment of status under 8 U.S.C. § 1159(b) was denied for inadmissibility,

1   the agency's inadmissibility determination was not barred from judicial review by 8 U.S.C. §

2   1252(a)(2)(B)(ii), given the strong presumption favoring reviewability of agency action); *Vivint,*

3   *Inc. v. Mayorkas*, 614 F. Supp. 3d 993, 998 (D. Utah 2022) (holding that "an immigration

4   officer's admissibility decision is nondiscretionary and thus not subject to the bar on review of

5   discretionary decisions" in section 1252(a)(2)(B)(ii)).

6   **C.  The Court has Jurisdiction to Review Defendants' Failure to Adhere to Due Process
        Requirements.**

7

8          25.     The Court also has jurisdiction to review Defendants' failure to adhere to due

9   process requirements. The Ninth Circuit has explained that it "is the duty of a reviewing court to

10  ensure that an agency follows its own procedural rules." *Kelley v. Calio*, 831 F.2d 190, 191-92

11  (9th Cir. 1987). These rules include, for instance, application of the correct standard of proof. *See*

12  *Accardi v. Shaughness*y, 347 U.S. 260, 268 (1954), *superseded by statute on other grounds as*

13  *stated in Dep't of Homeland Sec. v. Thuraissigiam*, 140 S.Ct. 1959 (2020) (recognizing right of

14  action for agency's failure to follow its own rules and procedures).

15         26.     Here, Mr. Wang has alleged violations of due process requirements, including

16  Defendants' application of an improperly heightened standard of proof. *See, e.g., Matter of*

17  *Chawathe*, 25 I. & N. Dec. 369, 376 (AAO 2010) ("The 'preponderance of the evidence'

18  standard requires that the evidence demonstrate that the applicant's claim is 'probably true,'

19  where the determination of 'truth' is made based on the factual circumstances of each individual

20  case.") (quoting *Matter of E-M-*, 20 I. & N. Dec. 77, 79-80 (Comm'r 1989)); *Liu v. INS*, 475

21  F.3d 135, 139 n. 2 (2nd Cir. 2007) (noting that demands for documentation must be calibrated to

22  the circumstances of the individual case).

23         27.     Therefore, the Court has jurisdiction to review Mr. Wang's challenge to

24  Defendants' findings on willful misrepresentation and maintenance of status.

25                              **IV.    VENUE**

26         28.     Venue is proper in this District because: (1) this is a civil action in which the

27  Defendants are employees or officers of the United States, acting in their official capacity, and

28  an agency of the United States; (2) Mr. Wang resides in this district, and no real property is

involved in this action; (3) Defendants issued the November 2024 Decision from the USCIS California Service Center, which is located in this District. 28 U.S.C. § 1391(e), 5 U.S.C. § 703.

## V.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

29.   Defendants' findings against Mr. Wang are final agency actions under the APA. Neither the INA nor its implementing regulations require Mr. Wang to pursue an administrative appeal of the findings. *See* 8 C.F.R. § 103.3(a).

30.   Therefore, there are no administrative remedies which must be exhausted. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993) ("[W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires [such] appeal before review . . . ." (emphasis in original)). Under 5 U.S.C. §§ 702 and 704, Mr. Wang has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

## VI.   LEGAL FRAMEWORK

### A.   The Post-Completion Optional Practical Training ("OPT") Program for F-1 Students.

31.   Defendants' erroneous findings are based on unfounded allegations against Mr. Wang during his previous F-1 status.

32.   After earning his bachelor's degree in China, Mr. Wang entered the U.S. in August 2013 to pursue a master's degree in electrical and computer engineering at the Illinois Institute of Technology ("IIT") Armour College of Engineering on an F-1 nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f).

27.   After graduation from IIT in 2015, Mr. Wang received temporary authorization to remain in the U.S. by participating in the post-completion Optional Practical Training ("OPT") program. *See* 8 C.F.R. § 214.2(f)(10)(ii).

28.   Post-completion OPT is a regulatory authorized training program that allows foreign graduates of U.S. universities to continue their F-1 student status and remain in the U.S. after graduation by engaging in up to 12 months of employment with U.S. companies. *See* 8

C.F.R. § 214.2(f)(10)(ii)(A). The OPT employment, which may be paid or unpaid, must be directly related to the student's major area of study. *Id.*

29.    Generally, to remain in valid F-1 status, a graduate cannot exceed 90 days of unemployment during the first 12 months of OPT. 8 C.F.R. § 214.2(f)(10)(ii)(E).

**B. Bona Fide Employment and Unpaid Internships for Post-Completion OPT Participants.**

30.    When Mr. Wang participated in the post-completion OPT program in 2015 and 2016, the legal framework governing his unpaid internship stopped short of any clear requirement that his employer actively supervise him or that he perform work at the employer's active direction.

**1. Bona fide employment.**

31.    According to the post-completion OPT regulation, "a student may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii)(A). The regulation does not define "employment."

32.    USCIS guidance on STEM OPT extensions requires that "[t]he employer will have and maintain a bona fide employer-employee relationship with the student." USCIS, *Optional Practical Training Extension for STEM Students (STEM OPT)*, June 3, 2022.[1] The OPT regulations and guidance do not define "bona fide employer-employee relationship" either.

33.    However, the regulation for another type of nonimmigrant visa, namely the H-1B visa for workers in specialty occupations, has codified the common law definition of a bona fide employer-employee relationship. 8 C.F.R. § 214.2(h)(4)(ii). According to that regulation, the relevant factors for a bona fide employment relationship include whether the employer "may hire, pay, fire, supervise, or otherwise control the work of any such employee." 8 C.F.R. § 214.2(h)(4)(ii). USCIS policy guidance indicates that the applicant should "meet[] at least one

---

[1] USCIS, *Optional Practical Training Extension for STEM Students (STEM OPT)*, June 3, 2022, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-extension-for-stem-students-stem-opt.

of" the factors listed in the regulation. USCIS Policy Memorandum, PM-602-0114, June 17, 2020.[2]

34.    The factors in the regulation (hiring, paying, firing, supervising, or otherwise controlling the work of the employee) are evidence of the ***right to control*** the employee, which is the essential characteristic of the employer-employee relationship. *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 450 (2003) (The common law touchstone of "control" is the principal guide in deciding whether a person is an "employee" in an "employer-employee relationship.").

35.    The regulation demonstrates that the ***right of control***, rather than the actual exercise of control, is the defining characteristic of the employer-employee relationship. The regulation defines a "United States employer" as one who "***may*** hire, pay, fire, supervise, or otherwise control the work of any such employee." 8 C.F.R. § 214.2(h)(4)(ii) (emphasis added). The fact that an employer "***may***" control the work of an employee, rather than ***must*** control his work, demonstrates that it is only the right to control and not the actual exercise of control which actually determines an employer-employee relationship. *Id.* (emphasis added).

36.    The distinction between ***right of control*** and ***actual control*** is clear in the context of H-1B visas, for instance, where the bona fide employment relationship persists even if the employer does not assign day-to-day tasks to the employee. *See ITServe All., Inc. v. Cissna*, No. 18-2350 (RMC), 33 (D.D.C. Mar. 10, 2020) (discussing the lawful ability of employers to place H-1B workers into "paid non-productive status" during periods when suitable work is unavailable, as authorized by 8 U.S.C. § 1182(n)(2)(C)(vii)(I)).

## 2.    Unpaid internships.

37.    According to U.S. Department of Labor ("DOL") guidelines in force at the time of Mr. Wang's unpaid OPT internship, unpaid internships in the for-profit private sector should provide training similar to that given in an educational environment and an intern's work should

---

[2] USCIS Policy Memorandum, PM-602-0114, June 17, 2020,
https://www.uscis.gov/sites/default/files/document/memos/PM-602-0114_ITServeMemo.pdf.

not displace the work of paid employees. DOL, Wage and Hour Division, *Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act* (Apr. 2010).[3] According to those guidelines, the essence of an unpaid internship is to provide "a bona fide education experience" for the intern, rather than engaging him in "the routine work of the employer's business on a regular and recurring basis."[4] These DOL guidelines also provided that an unpaid internship should focus on learning certain functions and may even involve "***no or minimal work***."[5] *See also Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1148 (9th Cir. 2017) (requiring unpaid interns in the for-profit private sector to be the "primary beneficiaries" of their own labors).

**C. Law and Procedure for Finding Willful Misrepresentation.**

38.    Defendants' erroneous finding of willful misrepresentation has the legal effect of barring Mr. Wang from all immigration benefits, including future non-immigrant or immigrant visas and lawful permanent resident status, and forever banning him from being able to enter the United States. *See* 8 U.S.C. § 1182; 8 C.F.R. § 214.1(a)(3)(i).[6]

39.    Under 8 U.S.C. § 1182(a)(6)(C)(i), an applicant who by "willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under [the INA] is inadmissible." Such persons "are ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a).

40.    Given the extremely harsh consequences of a willful misrepresentation finding, the USCIS officer must support it with specific findings concerning the five separate elements of 8 U.S.C. § 1182(a)(6)(C)(i).

---

[3] U.S. Department of Labor, Wage and Hour Division, *Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act* (April 2010), https://www.lb7.uscourts.gov/documents/13c07686.pdf, rescinded by Field Assistance Bulletin No. 2018-2, *Determining Whether Interns at For-Profit Employers Are Employees Under the FLSA* (Jan. 5, 2018), https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/fab2018_2.pdf.
[4] *Id.*
[5] *Id.* (emphasis added).
[6] A very limited discretionary waiver of inadmissibility for willful misrepresentation is available if an applicant has a spouse or parent who is a U.S. citizen or lawful permanent resident and who would suffer extreme hardship if the waiver were not granted. 8 U.S.C. § 1182(i).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 10 of 34

41.     According to precedential decisions of the Board of Immigration Appeals ("BIA"), which are binding on USCIS, and USCIS's own Policy Manual, in order to justify a finding of willful misrepresentation the adjudicator "***must find all of the . . . elements***" of 8 U.S.C. § 1182(a)(6)(C)(i). 8 USCIS Policy Manual J.2(B) ("USCIS-PM") (emphasis added) (citing *Matter of Y-G-*, 20 I. & N. Dec. 794, 796 (BIA 1994)).[7]

42.     The five elements are:

- The applicant made a false representation;

- The false representation was willfully made;

- The applicant procured, or sought to procure, a benefit under U.S. immigration laws;

- The false representation was material; and

- The false representation was made to a U.S. government official.

*Id.*

43.     In such a case, "if there is evidence that would permit a reasonable person to conclude that the applicant may be inadmissible for fraud or willful misrepresentation, then the applicant has not successfully met the burden of proof" and he would be inadmissible "unless the applicant is able to successfully rebut the officer's inadmissibility finding." 8 USCIS-PM J.3(A)(2).

44.     The applicant may rebut such a finding by establishing "***at least one***" of the following facts by a preponderance of the evidence:

- There was no false representation;

- The false representation was not willful;

- The misrepresentation or fraud was not made to procure a visa, admission, or some other benefit under the INA;

---

[7] USCIS is bound by the legal and precedential determinations of the Attorney General and his delegate, the Board of Immigration Appeals ("BIA"). *See* 8 U.S.C. § 1103(a)(1); 8 C.F.R. § 103.10(b). Further, USCIS must follow its own rules and procedures. *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), *superseded by statute on other grounds as stated in Dep't of Homeland Sec. v. Thuraissigiam*, 140 S.Ct. 1959 (2020). The USCIS Policy Manual ("USCIS-PM") is available at https://www.uscis.gov/policy-manual.

- The false representation was not material; or

- The false representation was not made to a U.S. government official.

*Id.* (emphasis added).

45.     Furthermore, the term "willfully" as used in the statute means "knowingly" making a false statement with knowledge of its falsity. *Matter of Healy and Goodchild*, 17 I. & N. Dec. 22, 28 (BIA 1979); 8 USCIS-PM J.3(D)(1).

46.     By contrast, making a statement in the "***good faith belief*** that the factual claims are true" falls short of the "willfully" standard in 8 U.S.C. § 1182(a)(6)(C)(i). 8 USCIS-PM J.3(D)(1) (emphasis added); *Healy and Goodchild*, 17 I. & N. Dec. at 28.

47.     In determining the issue of willful misrepresentation, the officer should consider ***the circumstances that existed at the time the benefit was issued***. *Id.* (finding that the applicant had not willfully misrepresented since he could have reasonably believed his actions were correct under the law at the time); 8 USCIS-PM J.3(D)(1).

48.     In addition, given the harsh consequences of a finding of willful misrepresentation, and because it turns on the applicant's "***subjective intent***," the factual basis for the finding "should be subject to ***close scrutiny***." *Healy and Goodchild*, 17 I. & N. Dec. at 29 (emphasis added). *See also Y-G-*, 20 I. & N. Dec. at 796 ("[W]e ***closely scrutinize the factual basis*** for a possible finding of excludability . . . for fraud in the procurement of entry documents since such a finding perpetually bars an alien from admission.") (emphasis added) (quoting *Matter of Shirdel*, 19 I. & N. Dec. 33, 35 (BIA 1984)).

49.     The USCIS Policy Manual similarly cautions the USCIS officer:

> When making the inadmissibility determination, the officer should keep in mind the severe nature of the penalty for fraud or willful misrepresentation. The person will be barred from admission for the rest of his or her life unless the person qualifies for and is granted a waiver. The officer should examine all facts and circumstances when evaluating inadmissibility for fraud or willful misrepresentation.

8 USCIS-PM J.2(E).

50.     Mr. Wang's history in the OPT program cannot support a finding of willful misrepresentation because:

- ***Mr. Wang never made a false representation concerning his unpaid OPT internship; and***

- ***Mr. Wang had a plausible, good faith belief that his internship complied with all legal requirements.***

*See* 8 U.S.C. § 1182(a)(6)(C)(i); *Y-G-*, 20 I. & N. Dec. at 796; *Healy and Goodchild*, 17 I. & N. Dec. at 29; 8 USCIS-PM J.2(B).

**D.  The Burden and Standard of Proof in Immigration Proceedings.**

51.     The burden of proof is on the applicant to demonstrate that he has not engaged in willful misrepresentation, i.e., that he is not inadmissible. *See* 8 U.S.C. § 1361 ("Whenever any person . . . makes application for admission . . . the burden of proof shall be upon such person to establish that he is eligible . . . .").

52.     As with most administrative immigration proceedings, the standard of proof for establishing admissibility is the "preponderance of the evidence" standard. *See Chawathe*, 25 I. & N. Dec. at 376. Thus, if the applicant establishes that a fact to be proven is "more likely than not" or "probably true," the applicant has satisfied the standard of proof. *Matter of E-M-*, 20 I. & N. Dec. 77, 79-80 (Comm'r 1989). *See also U.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987) (discussing "more likely than not" as a greater than 50% chance of an occurrence taking place).

53.     The USCIS officer adjudicating the case must examine "each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true." *Chawathe*, 25 I. & N. Dec. at 376. *See also* 1 USCIS-PM E.6.

54.     Further, the applicant can satisfy the preponderance of the evidence standard even if the adjudicating officer "has some doubt as to the truth" of the applicant's claim. *Chawathe*, 25 I. & N. Dec. at 376; *Healy and Goodchild*, 17 I. & N. Dec. at 28 (reversing an immigration judge's willful misrepresentation determination because an applicant's claims were "not unlikely," given the "uncertain state of the law at the time," and "plausible, if not compelling").

## VII.    BACKGROUND

### A. Background on Findream.

55.    Defendants' findings against Mr. Wang are based on Mr. Wang's association with the company Findream during his participation in the post-completion OPT program in 2015 and 2016.

56.    Findream was a company founded by Weiyun "Kelly" Huang in California in 2013, ostensibly as a consulting technology and business startup employing F-1 students participating in the OPT program and those seeking H-1B visas. Ms. Huang created a website advertising Findream as a company located in California's Silicon Valley with desirable connections to major employers and companies.

57.    Between 2013 and 2019, nearly 2,700 F-1 visa holders were affiliated with Findream or its sister company Sinocontech.[8] The company had all the hallmarks of credibility as a legitimate employer. For instance, Findream maintained valid business registration with the California Secretary of State and was a participant in good standing in USCIS's E-Verify program.[9] (Exhibit 35 to **Exhibit B**.) The company also appeared on lists published by U.S. Customs and Immigration Enforcement ("ICE") of top employers of OPT students through 2019.

58.    Additionally, Findream appeared on a list published by IIT Armour College of Engineering, Mr. Wang's alma mater, of "employers that have hired Illinois Tech students with OPT authorization between 2016-2018." (Exhibit 36 to **Exhibit B**.) Findream also garnered positive employee reviews on well-known employment websites like Indeed.com. (Exhibit 37 to **Exhibit B**.)

59.    However, in 2019 it was determined by the Government that Findream was a scheme by Ms. Huang to illegally benefit herself by offering to employ F-1 students, primarily

---

[8] *See* Gabe Gutierrez, et al., *Thousands of foreign students may have overstayed U.S. visas by 'working' for fake companies*, Euronews, Feb. 1, 2020, https://www.euronews.com/2020/01/02/thousands-foreign-students-u-s-student-visas-may-have-worked-n1109286.
[9] E-Verify is a program administered by the Social Security Administration and USCIS that confirms an employer's legitimacy and the employee's eligibility to work in the U.S. *See* 8 C.F.R. § 214.2(f)(10)(ii)(C)(5) (requiring an employer of STEM OPT participants to "remain[] a participant in good standing with E-Verify, as determined by USCIS").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 14 of 34

Chinese students participating in the OPT program and seekers of H-1B visas. *See U.S. v. Huang*, No. 1:19-cr-00275 (D. Ill.), Doc. 23 (Indictment, Jul. 25, 2019).

60.    Ms. Huang convinced students to pay her registration, training, and referral fees ranging from several hundred dollars to thousands of dollars.

61.    When F-1 students participating in the OPT program accepted employment with Findream, they were provided with offer letters advising them that they were unpaid interns, that the internships would include training/orientation focused primarily on learning and developing new skills and gaining a deeper understanding of concepts they learned in class, and that there was no guarantee of continuous employment.

62.    The Findream offer letters also promised that Findream would abide by the DOL guidelines on unpaid internships in force at the time. As described above, these DOL guidelines provided that the essence of an unpaid internship is to provide "a bona fide education experience" for the intern, rather than engaging him in "the routine work of the business on a regular and recurring basis," and may even involve "no or minimal work."[10]

63.    Findream's terms of employment also provided that interns would work remotely and that they should engage in self-training exercises to increase their competence to work on assignments with Findream's clients.

64.    However, in all but a few cases, Findream failed to live up to its promises of providing training and work assignments to the students it hired.

65.    In July 2019, Ms. Huang was charged with several counts of fraud for allegedly providing false offer letters and verification of employment letters as evidence of employment for students to use to show compliance with OPT requirements.

66.    Ms. Huang pled guilty to one count of conspiracy to commit fraud in December 2019. *Id.*, Doc. 42 (Plea Agreement, Dec. 20, 2019) ("Huang plea agreement"). In the Huang plea agreement, Ms. Huang admitted that she hired students to work for Findream, charged them a training or administrative fee, and then failed to provide the promised work. Ms. Huang also

---

[10] *See* n.3 *supra.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 15 of 34

stated in the plea agreement that some of the F-1 students she hired knew of the fraudulent scheme. *Id*. at 4-5.

67.     But far from being co-conspirators, Mr. Wang and many other international students were Findream's victims. Like other international students employed by Findream and other questionable companies, Mr. Wang was convinced that Findream was a legitimate company offering unpaid internships to students like him.

68.     However, the U.S. Government has systematically treated these students as if they were knowing fraud participants or knowingly violated the terms of their F-1 status. In multiple instances, the Government has taken adverse action against international students in Mr. Wang's position without establishing that the students had the requisite subjective intent or knowledge of the fraudulent scheme and ignored the students' statements denying such intent or knowledge.

69.     Such arbitrary and capricious treatment of students and blatant violation of their rights has already exposed the Government to several federal lawsuits, including Mr. Wang's first action in this Court, for violating due process and APA requirements. *See, e.g., Wang v. Mayorkas*, No. 2:24-cv-03189 (C.D. Cal. filed April 18, 2024); *Sharma v. U.S. Dept. of Homeland Security*, No. 2:23-cv-01227 (W.D. Wash. filed Aug. 10, 2023); *Gao v. U.S. Dept. of Homeland Security*, No. 20-cv-7517 (S.D.N.Y. filed Feb. 12, 2021).

70.     By maintaining all the objective indicia of legitimacy Findream succeeded in fooling not only foreign students like Mr. Wang, but also USCIS, ICE, and many universities.[11]

71.     Findream victimized students with impunity until Ms. Huang's 2019 indictment. As a university official observed at the time:

> You look at the documentation [of Findream, and] everything is there. . . . All the boxes are checked. And the students acted in good faith. This was a registered organization. . . . That's not the student's fault. That's not the institution's fault. That's not the government's fault. That's a crook.[12]

---

[11] *See* Gutierrez, *supra*.

[12] *Id.* (quoting Charles Bankart, University of Kansas Associate Vice Provost for International Affairs).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 16 of 34

72. Notwithstanding the revelation of Findream's questionable status in 2019, Mr. Wang's belief in the bona fides of the unpaid internship he held with Findream during his post-completion OPT in 2015 and 2016 is both plausible and in good faith.

73. Findream held itself out as a staffing company. During his internship, Mr. Wang remained ready and available to perform any work assigned and undertook self-training activities in the good faith belief that he was complying with all legal requirements. Mr. Wang had a bona fide employment relationship with Findream throughout the term of his internship, as described at length in Mr. Wang's submissions to Defendants.

**B. Procedural History.**

74. Until December 2023, Mr. Wang held H-1B status through his employment with Pluto TV Inc. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b). Unfortunately, after his employer submitted a Form I-129, Petition for a Nonimmigrant Worker, to extend Mr. Wang's H-1B status in July 2022, USCIS issued a Notice of Intent to Deny ("NOID") accusing Mr. Wang of willful misrepresentation based on Mr. Wang's Findream internship in OPT ("I-129 NOID"). Mr. Wang's response to the I-129 NOID refuted the accusations against him, but USCIS failed to issue any decision on the H-1B extension application. In December 2023, still lacking any decision on the I-129 Petition, Pluto TV Inc had no choice but to fire Mr. Wang.

75. On January 31, 2024, Mr. Wang submitted his I-539 Application so that he could return to F-1 student status to pursue a master's degree in information technology at Westcliff University in Irvine, California. Mr. Wang wishes to obtain this degree, which will be his second master's degree and his third advanced degree overall, in order to pursue his academic passions and expand his career prospects. In the legal brief, sworn testimony, and other exhibits accompanying Mr. Wang's I-539 Application, Mr. Wang refuted each of the accusations in the I-129 NOID.

76. But USCIS failed to address or even acknowledge the legal brief and evidence Mr. Wang submitted in support of the I-539 Application or in his response to the I-129 NOID. Instead, on February 7, 2024, USCIS issued a template denial based on the erroneous inadmissibility determination, which USCIS copied verbatim from the I-129 NOID.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 17 of 34

77.     Given the severity of the inadmissibility finding and the impossibility of lodging an administrative appeal against the denial of an application to change status, Mr. Wang filed his first action in this Court against Defendants seeking reversal of the inadmissibility determination. *Wang v. Mayorkas*, No. 2:24-cv-03189 (C.D. Cal.), ECF No. 1 (Complaint, April 18, 2024). Mr. Wang's claims were based on APA and due process violations, including USCIS's failure to apply the law of willful misrepresentation, failure to follow the agency's own rules and procedures, and subjecting Mr. Wang to a fundamentally unfair procedure.

78.     In response, USCIS reopened its administrative proceedings on Mr. Wang's I-539 Application, thereby convincing the Court to dismiss Mr. Wang's complaint without prejudice on April 30, 2024. *Id.*, ECF No. 21 (Order, April 30, 2024).

79.     On May 29, 2024, USCIS issued a NOID for Mr. Wang's I-539 Application, which contained fundamental legal errors and unsupported assertions ("May 2024 NOID"). (**Exhibit A**.) The May 2024 NOID demanded "[w]ork products such as reports, presentations, or analyses to show that you engaged in qualifying post-completion OPT employment with Findream, and "documentary evidence supporting your work products during" Mr. Wang's employment with Findream. (*Id*.)

80.     In his response to the May 2024 NOID, Mr. Wang duly resubmitted copies of his self-study work product and detailed explanations of his activities during the Findream internship, as well as screenshots from GitHub and LeetCode, which clearly list project activity in September 2015, October 2015, and March 2016, during his Findream internship ("Response to May 2024 NOID"). (**Exhibit B**.) Mr. Wang did the best that he could to document his work during his Findream internship, given that USCIS's demand for work product came more than 8 years after his brief association with Findream ended.

81.     The May 2024 NOID also included several new accusations, alleging that Mr. Wang presented insufficient evidence of nonimmigrant intent and eligibility to change status. (**Exhibit A**.) These new ineligibility accusations were frivolous in that they demanded proofs from Mr. Wang in excess of legal requirements. Further, the administrative record already contained evidence to refute USCIS's new eligibility accusations. At best, the lack of evidentiary

or legal grounds for the new accusations in the May 2024 NOID was another example of arbitrary and capricious agency action; at worst, it suggests bad faith by USCIS in retaliation against Mr. Wang for filing his first action in this Court against Defendants.

82.    Before issuing the November 2024 Decision, Defendants issued yet another NOID for Mr. Wang's I-539 Application on October 4, 2024, this time accusing him of being out of status on the date that he filed his I-539 Application ("October 2024 NOID"). Mr. Wang duly responded to the October 2024 NOID on October 25, 2024

83.    On November 27, 2024, USCIS issued the November 2024 Decision, addressing solely the issues of willful misrepresentation and maintenance of F-1 status. (**Exhibit C**.) The November 2024 Decision ignored Defendants' other accusations in the May 2024 NOID and the October 2024 NOID.

## VIII.   DEFENDANTS' ERRONEOUS FINDINGS

**A. Defendants' Finding of Willful Misrepresentation is Erroneous because Mr. Wang Established by a Preponderance of the Evidence that He Did Not Misrepresent His Findream Internship.**

84.    In his voluminous submissions and sworn statements to USCIS, Mr. Wang recounted the circumstances of his acceptance of Findream's unpaid internship offer and his activities during the internship. Mr. Wang established by a preponderance of the evidence that he had a bona fide employment relationship with Findream throughout the term of his internship and that he fulfilled all legal requirements.

85.    However, in the November 2024 Decision, USCIS insists in error that no bona fide employment relationship could have existed between Findream and Mr. Wang, because "applicants deemed not to have been engaged in any work for their declared employer are considered to be unemployed for that period of time." (**Exhibit C**.)

86.    This finding is erroneous for several reasons:

87.    ***First***, Mr. Wang had a bona fide employment relationship with Findream as a matter of law. Findream's offer to Mr. Wang embraced at least four of the regulatory elements codifying the common law test of employer control over the employee. *See* 8 C.F.R. §

214.2(h)(4)(ii) (The test of bona fide employment is whether the employer "may hire, pay, fire, supervise, or otherwise control the work of any such employee."); USCIS PM-602-0114, June 17, 2020 (USCIS policy guidance explains that the employment relationship should "meet[]at least one of" the criteria listed in 8 C.F.R. § 214.2(h)(4)(ii)). *See also Clackamas Gastroenterology Assocs., P.C.*, 538 U.S. at 450 (The common law touchstone of "control" is the principal guide in deciding whether a person is an "employee" in an "employer-employee relationship.").

88.    Furthermore, throughout Mr. Wang's internship at Findream, the company maintained the objective indicia of a legitimate employer, including, for instance, up-to-date company registration with the California Secretary of State and "remain[ing] a participant in good standing with E-Verify, as determined by USCIS." 8 C.F.R. § 214.2(f)(10)(ii)(C)(5). The revelation in 2019 that Findream engaged in visa fraud fails to destroy the bona fides of Mr. Wang's relationship with it in 2015 and 2016.

89.    ***Second***, Mr. Wang held qualifying OPT employment despite the lack of work assignments that he expected to receive from Findream's clients. The fact that these assignments never materialized did not destroy the bona fide nature of the employment relationship. There is no requirement in the post-completion OPT regulations, the DOL guidelines for unpaid internships in force at the time, or the common law and regulatory definition of a bona fide employment relationship, that the employer actively assign work to the employee or that the employee perform activities at the employer's active direction. Mr. Wang additionally submitted extensive evidence of his self-study program in the Findream internship, including clarification of the timeline and record of his activities. (Exhibits 33 and 34 to **Exhibit B**.)

90.    Further, Defendants failed to provide any authority for their finding that Mr. Wang's self-study activities didn't comply with OPT requirements. The Code of Federal Regulations merely states that an F-1 student's activities in post-completion OPT shall consist of "training directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii)(A). Mr. Wang's self-study activities clearly met this requirement.

91.    The simple language of the post-completion OPT program, which allows for unpaid internships, is considerably less stringent than the STEM OPT extension program, which requires the employment to be paid. *See, e.g.*, 8 C.F.R. §§ 214.2(f)(10)(ii)(C)(7)(ii), (f)(10)(ii)(C)(9)(i) (requiring identification of goals for the STEM OPT extension, methods of achieving those goals, implementation of performance evaluation process, methods of oversight and supervision, and schedule of evaluation report submissions).

92.    If Defendants desire to impose more restrictive conditions on students in unpaid post-completion OPT internships, there is nothing to stop them from promulgating a structured regulatory program as they have for paid employment in the STEM OPT extension program.

93.    For instance, while post-completion OPT requires mere alignment of activities with the student's major course of study, STEM OPT requirements include training plans, periodic certification of adherence to the training plans, and progress evaluations. *See, e.g.*, 8 C.F.R. §§ 214.2(f)(10)(ii)(C)(7)(ii), (f)(10)(ii)(C)(9)(i), *supra.*

94.    The STEM OPT program's detailed requirements were promulgated through the APA's notice-and-comment rulemaking procedures. 5 U.S.C. § 553. *See Extending Period of Optional Practical Training by 17 Months for F-1 Nonimmigrant Students With STEM Degrees and Expanding Cap-Gap Relief for All F-1 Students With Pending H-1B Petitions*, 73 Fed. Reg. 18,954-55, April 8, 2008; *Improving and Expanding Training Opportunities for F-1 Nonimmigrant Students With STEM Degrees and Cap-Gap Relief for All Eligible F-1 Students*, 81 Fed. Reg. 13,046, March 11, 2016.

95.    By contrast, the post-completion OPT "rules" Defendants are attempting to impose on Mr. Wang could be characterized as "interpretive" at best. *See* 5 U.S.C. § 553(b)(A); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015). However, an agency's interpretive rules lack the force of law. "[The] convenience [of skipping notice and comment rulemaking] comes at a price: Interpretive rules 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'" *Id.* (citing *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995)).

96.    **Third**, Findream's offer letter contained an explicit caveat that there was no guarantee of continuous employment. Accordingly, Mr. Wang resorted to a relevant self-study program as he waited for Findream to assign him projects from its clients. Mr. Wang's self-study program constituted "training directly related to [his] major area of study" in electrical and computer engineering at IIT. 8 C.F.R. § 214.2(f)(10)(ii)(A).

97.    The evidence of Mr. Wang's study program in the Findream internship includes a LeetCode algorithm training log, which helped him to strengthen his coding skills, as well as GitHub software projects, which helped him to understand how to design architecture and implement small file systems in memory. (Exhibits 33 and 34 to **Exhibit B**.) These activities were directly relevant to Mr. Wang's position as a software engineer intern at Findream and his master's degree in electrical and computer engineering at IIT.

98.    **Fourth**, Mr. Wang included descriptions of his Findream internship activities in his DS-160 Form and his I-539 Application (WAC2411150027). These descriptions indicated that Mr. Wang "[r]eceived" training during the internship. However, Mr. Wang testified under penalty of perjury that his word choice was based on a lack of understanding of the difference between the verbs "receive" and "gain" in the English language. Mr. Wang further testified that he was trying to convey that he had acquired skills by completing training and working on side projects during the Findream internship.

**B. Even Assuming that there was a Misrepresentation, which Mr. Wang Vehemently Denies, Defendants' Finding of Willful Misrepresentation is Erroneous because Mr. Wang Established by a Preponderance of the Evidence that Any Alleged Misrepresentation was Not Willful.**

99.    The term "willful" in 8 U.S.C. § 1182(a)(6)(C)(i) should be interpreted as "'knowingly' as distinguished from accidentally, inadvertently, or in a good faith belief that the factual claims are true." 8 USCIS-PM J.3(D)(1). *See Healy and Goodchild*, 17 I. & N. Dec. at 28 (finding that the applicant had not engaged in willful misrepresentation since it was plausible that he honestly believed his actions were correct under the law at the time).

**1. Defendants should have considered Mr. Wang's subjective circumstances and the circumstances that existed at the time of his unpaid internship.**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 22 of 34

100. Defendants wrongfully refused to consider Mr. Wang's circumstances as a young and naïve foreign graduate student on the first job of his entire life in America. *See Lalayan v. Garland*, 4 F. 4th 822, 836-37 (9th Cir. 2021) (the adjudicator may not simply ignore an applicant's explanation for a purported implausibility); *Xiu Ying Wu v. U.S. Att'y Gen*., 712 F.3d 486, 494 (11th Cir. 2013) (an adjudicator's "assertion that a given account is implausible does not necessarily make it so").

101. Further, Defendants should have considered the circumstances that existed at the time of Mr. Wang's Findream internship. *Matter of Healy and Goodchild*, 17 I. & N. Dec. at 28-29; 8 USCIS-PM J.3(D)(1) ("When determining the "willfulness" of a person's false representation, the officer should consider the circumstances that existed at the time the benefit was issued.").

102. Mr. Wang made a decision to engage in relevant self-training during his internship as he waited for assignments from Findream. He honestly believed that this course of action was consistent with the OPT requirement that he engage in training directly related to his major course of study, given that Findream had warned him there was no guarantee of continuous employment during his internship.

103. At the time of Mr. Wang's association with Findream, USCIS, ICE, and many universities believed Findream to be a legitimate employer of OPT students.

104. Given the legal framework governing unpaid OPT internships, Mr. Wang's claim of good faith is entirely plausible.

105. Mr. Wang's case has many similarities to the landmark BIA decision *Matter of Healy and Goodchild*. 17 I. & N. Dec. 22. In that case, the applicant applied for a visitor visa for plans to study in the United States, because he honestly believed that studying in the United States fell under the term "to visit America." *Id*. at 28. The BIA found the applicant's explanation to be "plausible, if not compelling," such that an allegation of willful misrepresentation could not be sustained against him. *Id*. ("While the record is not free of ambiguities, we are, on balance, unable to agree with the conclusion [of willful misrepresentation] reached by the immigration judge.").

106.    According to the BIA in that case:

> In determining whether an alien has procured his visa by fraud or willful misrepresentation of a material fact within the meaning of [8 U.S.C. § 1182(a)(6)(C)(i)], it is appropriate to examine the circumstances as they existed at the time the visa was issued. Under the rule of law announced herein, an alien's trip to the United States for the primary purpose of participating in a course of study at an educational institution that has not been approved by the Service may not be characterized as a "visit" of a nature which would qualify him for status as a visitor for pleasure under [8 U.S.C. 1101(a)(15)(B)]. This precise issue, however, has not previously been addressed by the Board. Given the uncertain state of the law at the time Mr. Healy applied for his visa, it is not unlikely that he considered the declared purpose of his trip, "to visit America," to be an accurate statement of his intent. Moreover, we find Mr. Healy's explanation with respect to his stated anticipated length of stay plausible, if not compelling.

*Id.* (footnote omitted).

107.    Likewise, given the circumstances that existed at the time, Mr. Wang's self-training activities as he waited for projects from Findream accurately reflected his belief that he was engaging in OPT-compliant training directly related to his major course of study.

**2. Defendants may not engage in conjecture and speculation about what someone in Mr. Wang's situation would or would not do.**

108.    Mr. Wang's expectation of receiving work assignments from Findream's clients did not align with the reality of his experience during his internship. USCIS made an unwarranted assumption that Findream's failure to provide the promised work should have prompted Mr. Wang, or somehow induced a duty, to inquire further. (**Exhibit C**.)

109.    But USCIS may not simply speculate and make conjectures about what someone in Mr. Wang's position would or would not do. *See Chawla v. Holder*, 599 F.3d 998, 1005-6 (9th Cir. 2010) ("The BIA's disbelief of Chawla's decision not to challenge his suspension from work was based on speculation and conjecture about what someone in Chawla's position would or would not do; thus, it does not support the adverse credibility finding."); *Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000) ("We cannot uphold an adverse credibility finding that rests on conjecture and speculation." (Citation omitted.)). S*ee also Zhou v. Gonzales*, 437 F.3d 860, 865

(9th Cir. 2006) (holding that an immigration judge's disbelief of an applicant's testimony did not support an adverse credibility finding because the judge's disbelief was "based on speculation and conjecture about Zhou's position in Chinese society and what someone in that position would or would not do").

### 3. The record does not support USCIS's finding that Mr. Wang engaged in "deliberate avoidance," which is an overbroad interpretation of "willfulness."

110.    USCIS accused Mr. Wang of "deliberate avoidance" and making "a conscious decision to avoid addressing the suspicious nature of the employment" with Findream. (**Exhibit C**.) However, the accusation rests on USCIS's false assumption that the lack of work assignments from Findream completely invalidated Mr. Wang's unpaid internship.

111.    Mr. Wang's case contrasts sharply with the case cited by USCIS for its accusation that Mr. Wang made a "conscious choice . . . to avoid knowing" why Findream failed to provide him work projects from its clients. *Matter of Valdez*, 27 I. & N. Dec. 496, 499 (BIA 2018). In *Matter of Valdez*, which is the BIA case cited by USCIS for this accusation, the applicants' immigration filings, which had been prepared for them by someone else, contained untrue statements and the applicants' pleas of ignorance did not relieve them of their responsibility for the contents of the filings. *Id*. In contrast to the applicants in *Matter of Valdez*, Mr. Wang has always maintained the truth of his submissions. This includes Mr. Wang's good faith belief in the bona fides of his employment relationship, despite the lack of work assignments.

112.    In the November 2024 Decision, USCIS noted that Mr. Wang testified that he "felt something was not right" during the internship and that he felt that Findream did not treat him professionally or that perhaps the company was not doing well. (**Exhibit C**.) However, USCIS chose to ignore Mr. Wang's other testimony that he engaged in self-training while he waited for work because he continued to hope that the company would find projects for him with its clients.

113.    The Ninth Circuit has warned that the adjudicator must not "cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010). *See also Lalayan*, 4 F.4th at

836-37 (the adjudicator may not simply ignore an applicant's explanation for a purported implausibility).

114. Further, Mr. Wang urges the Court to reject Defendants' overbroad reading of the willful misrepresentation statute. Courts, including this District, consistently interpret the term "willful" in 8 U.S.C. § 1182(a)(6)(C)(i) to require actual knowledge of falsity. *See Melara v. Mayorkas*, 663 F. Supp. 3d 1158, 1166 (C.D. Cal. 2021) (stating that under 8 U.S.C. § 1182(a)(6)(C)(i) "an alien's misrepresentation is "willful" if the statement was deliberate and voluntary, and the alien had knowledge of the statement's falsity"). *See also Loper Bright Enterprises v. Raimond*o, 603 U.S. 369 (2024) (holding that courts must exercise independent judgment rather than deferring to an agency's statutory interpretation).

**C. Defendants' Adverse Inferences Concerning Mr. Wang's Credibility are Arbitrary and Capricious.**

115. Under the APA's "arbitrary and capricious" standard, USCIS "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*")). *See also Chawathe*, 25 I. & N. Dec. at 375 (noting the adjudicator "must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence"); 8 C.F.R. § 103.2(b)(l) (all the evidence must be considered).

116. Defendants' adverse inferences against Mr. Wang violated this requirement. In making the adverse inferences, Defendants selectively discounted and distorted Mr. Wang's testimony and focused on immaterial inconsistencies.

117. In his sworn declarations, Mr. Wang testified that he received the offer letter from Findream on September 11, 2015, and that he started his internship in September 2015. However, Defendants claim to possess a copy of the Findream offer letter which was signed and dated by Mr. Wang one month earlier, on August 11, 2015. (**Exhibit C**.) Defendants also cited Mr. Wang's previous immigration filings indicating that he started his Findream internship on August 31, 2015.

118.    USCIS used these inconsistencies as the basis for an adverse inference about Mr. Wang's credibility. But Mr. Wang himself first raised the issue of the inconsistent dates. Mr. Wang further testified that the offer letter had an incorrect date. He also testified that he did not pay any attention to the discrepancy at the time and only realized later that his internship start date was recorded incorrectly as August 31, 2015, in his school records.

119.    Yet USCIS refused to grant any weight to these other pieces of Mr. Wang's testimony. Thus, USCIS selectively discounted and distorted Mr. Wang's testimony in order to support its adverse credibility inference.

120.    This tactic by USCIS violates Defendants' duty to engage in "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015). As noted above, the adjudicator must not "cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Shrestha*, 590 F.3d at 1040. *See also Lalayan*, 4 F.4th at 836-37 (the adjudicator may not simply ignore an applicant's explanation for a purported implausibility).

121.    Additionally, the above-mentioned inconsistencies concerning dates are *immaterial* to Mr. Wang's claim. The issues of whether the offer letter bore an incorrect date or Mr. Wang's internship ran from August 31, 2015, or after September 11, 2015, are *immaterial* to the legitimacy of his employment relationship with Findream, his good faith belief in the legitimacy of that relationship, and his maintenance of status in OPT. *See* 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a *material* fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." (Emphasis added.))

122.    To apply the maxim of *falsus in uno, falsus in omnibus* ("false in one thing, false in everything") against Mr. Wang, Defendants would have had to show that the inconsistency is "material and central to the claim, not minor." *Li v. Holder*, 738 F.3d 1160, 1166 (9th Cir. 2013) (analyzing materiality and credibility in the context of asylum proceedings). *See also Shrestha*, 590 F.3d at 1044 (noting that trivial inconsistencies should not form the basis of an adverse credibility determination).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.  Defendants Subjected Mr. Wang to Evidentiary Demands in Excess of Legal Requirements.**

123.    USCIS demanded "documentary evidence of work product related to your position as a Software Engineer Intern or any other qualifying work at Findream." (**Exhibit A**.)

124.    In response, Mr. Wang documented to the best of his ability the timeline and record of his activities during his Findream internship, which ended more than 8 years ago. (Exhibits 33 and 34 to **Exhibit B**.)

125.    But USCIS rejected Mr. Wang's evidence as allegedly failing to show that the activities were performed in fulfillment of, or during, his internship. (**Exhibit C**.) On the contrary, however, the documents Mr. Wang provided clearly indicate that they were completed in October 2015, November 2015, and March 2016, during his internship. (Exhibits 33 and 34 to **Exhibit B**.) Additionally, Mr. Wang provided detailed explanations of these documents in his sworn testimony to illustrate exactly how the self-training related to his software engineer internship and his IIT master's degree in electrical and computer engineering. (Exhibit 33 to **Exhibit B**.)

126.    In any case, before rejecting Mr. Wang's documentary evidence for lacking sufficient detail concerning his activities more than 8 years ago, USCIS should have made a finding that "such documents . . . are generally available." 8 C.F.R. § 103.2(b)(2)(ii). USCIS never made any such finding here.

127.    At the time of his Findream internship, Mr. Wang had no reason to record every detail of his daily activities. To demand such a detailed accounting of Mr. Wang's self-training program more than 8 years later is unreasonable under the circumstances. *See Abdurakhmanov v. Holder*, 735 F. 3d 341, 347 (6th Cir. 2012) (An applicant for immigration benefits is only required to supply those types of documents that can be "reasonably expected" given his circumstances.); *Liu*, 475 F.3d at 139 n. 2 (noting that demands for documentation must be calibrated to the circumstances of the case).

**E.  The Huang Plea Agreement Cannot be Held Against Mr. Wang.**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 28 of 34

128.    When Mr. Wang was associated with Findream in 2015 and 2016, it appeared in every respect to be a legitimate company, including up-to-date company registration with the California Secretary of State and good standing in the USCIS E-Verify program. Further, the Huang plea agreement does not support a finding that Mr. Wang willfully misrepresented his Findream employment. Given Ms. Huang's questionable integrity and compromised credibility as a perpetrator of fraud, her statements in the plea agreement potentially implicating other individuals should not be granted more weight than Mr. Wang's testimony.

129.    In any case, there is no direct evidence implicating Mr. Wang in the Huang plea agreement. In the Huang plea agreement, Ms. Huang admitted that only *some* of the approximately 2,700 students employed by Findream or Sinocontech knew of her criminal scheme. There is no evidence to suggest that Mr. Wang was one of them. The Huang plea agreement names only five individual OPT participants in the fraud, who are identified as "XQ," "LT, JC, YG, and SZ." *U.S. v. Huang*, No. 1:19-cr-00275 (D. Ill.), Doc. 42 at 5.

130.    Further, the Huang plea agreement states that Ms. Huang "intermittently hired legitimate employees in the United States and China in order to handle software development and maintenance of the defendant-associated websites and WeChat official account." *Id*. The Huang plea agreement is silent as to other "legitimate employees," such as unpaid interns. Nevertheless, the November 2024 Decision insinuates that this silence negates the possibility that Mr. Wang held a legitimate unpaid internship. However, neither logic nor the case record support that insinuation.

**F.  Mr. Wang's Attestations that He Maintained F-1 Status Were Truthful and Made in Good Faith.**

131.    USCIS wrongfully concluded Mr. Wang willfully misrepresented his maintenance of F-1 status in various immigration filings, including:

- Form I-765, Application for Employment Authorization (LIN1690316309), filed on December 29, 2015, seeking a replacement OPT EAD card after Mr. Wang's original card was stolen in a robbery;

- Form I-765 (YSC1690124661), filed on July 5, 2016, for Mr. Wang's STEM OPT extension;

- Form DS-160, Online Nonimmigrant Visa Application, filed on October 22, 2018, for Mr. Wang's H-1B visa; and

- The I-539 Application (WAC2411150027), filed on February 1, 2024, seeking change of status from H-1B to F-1.

(**Exhibit C**.)

132.    Those accusations lack legal basis. They could only be true if one first accepts Defendants' erroneous findings that Mr. Wang's Findream internship was not a valid period of employment and that Mr. Wang knew it to be invalid. However, Mr. Wang's Findream internship was a valid period of employment as a matter of law and Mr. Wang held a plausible, good faith belief in its validity.

133.    Therefore, Mr. Wang's attestations that he maintained F-1 status are not willful misrepresentations.

### G.  Mr. Wang's Inclusion Of Findream On The Resume He Submitted With His I-539 Application Is Not A Willful Misrepresentation.

134.    USCIS also wrongfully concluded that Mr. Wang engaged in willful misrepresentation because he listed Findream on the resume he submitted with his I-539 Application (WAC2411150027) on February 1, 2024. (**Exhibit C**.)

135.    However, as discussed above, Mr. Wang maintains that his Findream internship was a valid period of employment as a matter of law. Further, Mr. Wang's submissions supporting the I-539 Application include lengthy legal arguments that the Findream employment in 2015 and 2016 was valid, notwithstanding the Huang plea agreement in 2019. (**Exhibit B**.)

136.    From a practical perspective, Defendants' logic is tautological. If Mr. Wang did not consider himself employed by Findream because his employment was deemed to be invalid, then he would be accused of misrepresentation because he reported work with Findream in all other instances; however, when he considered himself employed by Findream, he is equally accused of willful misrepresentation, because USCIS alleged that this employment was invalid.

A reasonable approach resolves this puzzle – given the facts that existed when Mr. Wang was employed by Findream, he held a consistent and reasonable belief that his work with Findream was appropriate, and thus, Mr. Wang did not knowingly or deliberately misrepresent any fact, and merely relayed what he believed to be a valid OPT employment.

137.    USCIS's attempt to distort Mr. Wang's submissions into fresh evidence of willful misrepresentation is absurd. At best, the distortion is arbitrary and capricious in violation of the APA. At worst, the distortion is an act of bad faith by USCIS in retaliation against Mr. Wang for filing his first action in this Court. *See* 5 C.F.R. § 2635.101(b) (obliging federal employees to carry out their duties with honesty and impartiality).

## IX.    RESERVATION OF RIGHTS

138.    Mr. Wang reserves the right to add additional allegations of agency error and related causes of action upon receiving the certified administrative record.

## X.    GROUNDS FOR RELIEF

139.    Defendant USCIS is responsible for determining Mr. Wang's admissibility and maintenance of status. *See generally* 8 U.S.C. § 1182(a); 8 C.F.R. § 214.1.

140.    Mr. Wang demonstrated by a preponderance of the evidence that he is not inadmissible for willful misrepresentation and that he maintained lawful status.

141.    However, Defendants misapplied binding legal standards and held Mr. Wang to improperly heightened standards of proof in making the erroneous findings concerning willful misrepresentation and maintenance of F-1 status against him.

142.    These agency actions violated the APA and due process requirements.

## COUNT ONE

**APA: Defendants Engaged in Arbitrary, Capricious, Unlawful, and Ultra Vires Action.**

143.    Mr. Wang re-alleges and incorporates herein by reference, as if fully set forth herein, all the allegations set forth above.

144.    The findings against Mr. Wang constitute final agency action under the APA. *See* 5 U.S.C. § 704.

145.    Mr. Wang is entitled to judicial review because he is aggrieved by Defendants' erroneous findings. *See* 5 U.S.C. § 702. The findings strip Mr. Wang of the right to apply to work or study in the U.S., and subject him to a lifetime admission bar and ineligibility for any future immigration benefits.

146.    Findings that an applicant engaged in willful misrepresentation or failed to maintain lawful status are nondiscretionary, legal determinations that involve objective, predicate criteria. Therefore, there is no room for USCIS to add additional requirements. *See Innova Solutions, Inc. v. Baran*, 983 F.3d 428, 433 (9th Cir. 2020) ("Where the objective criteria of a regulation are clearly met, there is no room for an agency to interpret a regulation so as to add another requirement.") (quoting *Salehpour v. INS*, 761 F.2d 1442, 1447 (9th Cir. 1985)). *See also Mejia v. Ashcroft*, 298 F.3d 873, 878 (9th Cir. 2002) (noting that an agency "does not have the discretion to misapply the law.").

147.    Defendants ignored and misapplied binding legal standards, engaged in impermissible speculation and conjecture, and applied an improperly heightened standard of proof to find Mr. Wang inadmissible for willful misrepresentation and to find that he failed to maintain F-1 status.

148.    These findings are arbitrary, capricious, not in accordance with law, and ultra vires, in violation of the APA. 5 U.S.C. § 706(2).

**COUNT TWO**

**Due Process: Defendants Subjected Mr. Wang to Improperly Heightened Standards of Proof.**

149.    Mr. Wang re-alleges and incorporate herein by reference, as if fully set forth herein, all the allegations set forth above.

150.    It is well-established that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Alonso-Juarez v. Garland*, 80 F. 4th 1039, 1052 (9th Cir. 2023) (alterations in original) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

151.    The Due Process Clause requires Defendants to observe basic principles of fundamental fairness in adjudicating Mr. Wang's application. *See Kleindienst v. Mandel*, 408 U.S. 753, 766-67 (1972) (In the enforcement of its immigration policies, "the Executive Branch of the Government must respect the procedural safeguards of due process.").

152.    To establish a due process violation in the immigration context, the petitioner must show that "the proceeding was 'so fundamentally unfair that the alien was prevented from reasonably presenting his case'" and "prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (quoting *Platero-Cortez v. INS*, 804 F.2d 1127, 1132 (9th Cir. 1986)).

153.    Defendants held Mr. Wang to an improperly heightened standards of proof.

154.    ***First***, Defendants demanded conclusive documentary proof of Mr. Wang's daily activities during his unpaid internship more than 8 years ago. But Defendants never made any finding that such documents are generally available or that such a demand is reasonable under the circumstances. *See* 8 C.F.R. § 103.2(b)(2)(ii); *Abdurakhmanov*, 735 F. 3d at 347.

155.    Defendants' demand for conclusive documentary proof exceeded the preponderance of the evidence standard, which is "greater than 50 percent probability." *Cardozo-Fonseca*, 480 U.S. 421. *See also Addington v. Texas*, 441 U.S. 418, 423 (1979) ("The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.") (internal quotations and citations omitted).

156.    ***Second***, Defendants attempted to hold Mr. Wang to an imaginary standard of objective reasonableness by asserting that he had a duty to "take action" or "inquire further" during his Findream internship. (**Exhibit C**.) But such demands are based on speculation and conjecture contrary to law. Instead, USCIS should have assessed whether Mr. Wang's claim of good faith was plausible in light of his subjective circumstances and the circumstances that existed at the time of his unpaid internship. *See, e.g., Chawla*, 599 F.3d at 1005-6; *Zhou*, 437 F.3d at 865; *Healy and Goodchild*, 17 I. & N. Dec. at 29.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.
PAGE NO. 33 of 34

157.    These actions by Defendants prevented Mr. Wang from reasonably presenting his case, which may have affected the outcome of the proceeding. *Colmenar*, 210 F.3d at 971. *See* 8 USCIS-PM J.3(A)(2) (stating that an applicant may successfully rebut a finding of willful misrepresentation by establishing "at least one" of the enumerated defenses).

158.    Therefore, due process violations warranting reversal of the findings have occurred.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Mr. Wang prays that the Court grant the following relief:

159.    Assume jurisdiction over this matter;

160.    Enter an Order compelling Defendants to vacate the erroneous findings on willful misrepresentation and maintenance of F-1 status;

161.    Grant reasonable attorney's fees and costs as provided under the APA, 5 U.S.C. § 504, and the EAJA, 28 U.S.C. § 2412(d)–(f), and as otherwise permitted by law; and

162.    Grant such further relief as the Court deems just and proper.

Respectfully submitted,

Date:    February 4, 2025

*/s/ Nguyen D. Luu*
**Nguyen D. Luu**
Luu Law, PC
772 N. 1st Street
San Jose, CA 95112-6302
Telephone: (408) 975-9321
FAX: (408) 975-9654
E-mail: Nguyen@luulaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, Nguyen D. Luu, hereby certify that on ____2/4_____ 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

I further certify that a copy of the complaint, exhibits, and summons, along with a copy of the court's standing order was delivered by certified mail to each of the parties listed below on

_____ 2025:

Kristi Noem
Secretary of Homeland Security
c/o Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

Jennifer B. Higgins
Acting Director of USCIS
c/o Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

Tracy Tarango
Director of USCIS California Service Center
24000 Avila Road
Laguna Niguel, CA 92677

Civil Process Clerk
United States Attorney's Office
Central District of California
300 North Los Angeles Street
Suite 7516
Los Angeles, CA 90012

James R. McHenry III
Acting Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Date: February 4, 2025            _/s/ Nguyen D. Luu_
                                 **Nguyen D. Luu**

CERTIFICATE OF SERVICE
CASE NO.
PAGE NO. 1 of 2

Luu Law, PC
772 N. 1st Street
San Jose, CA 95112-6302
Telephone: (408) 975-9321
FAX: (408) 975-9654
E-mail: Nguyen@luulaw.com
*Attorney for Plaintiff*